**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Daniel D. Domenico**

Civil Action No. 1:23-cv-01858-DDD-TPO

JOHN DOE, by and through his next friend, JANE DOE,

Plaintiff,

v.

MESA COUNTY VALLEY SCHOOL DISTRICT 51;
JARED BUREK, in his individual capacity;
TOM LEFEBRE, in his individual capacity;
MARK ALLEN, in his individual capacity,

Defendants.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This case is about a series of emails that a high school student sent to his teachers. The emails landed Plaintiff in hot water because the administrators at the high schools found the emails disrespectful. He argues that the administration's responses violated his First Amendment rights and constituted retaliation. Following discovery, Defendants moved for summary judgment, arguing, among other things, their actions were permissible means to prevent substantial disruption under *Tinker v. Des Moines Independent Community School District*. I agree.

- 1 -

## BACKGROUND[1]

Plaintiff attended Gateway K-12 School at the beginning of the 2020-2021 school year, his ninth-grade year. During that year, issues often arose between him and his parents and the school.

On February 3, 2021, Plaintiff sent an email to his teacher Ms. Ciocco. The email read "Mrs. Ciocco keeps saying she is in a bad mood and has been giving me dirty looks and when I get my music on like she allows us she tells me if she sees my phone out again she will take it but other students get phone calls and she lets them go on there phone and I have no work in her math class, please forward to my parent."[2] Ms. Ciocco sent Plaintiff to the office. Defendants contend it was for being disrespectful, Doc. 43 at ¶ 10, Plaintiff argues it was because of the email, Doc. 44 at ¶ 10.

When Plaintiff arrived at the office, Principal Mark Allen asked Plaintiff to step into his office to discuss the problem, but Plaintiff refused. Plaintiff called his parents on speaker phone, and they demanded information. The conversation could be heard throughout the main office and disturbed the business of the school. Plaintiff's parents did not permit Plaintiff to speak with Principal Allen. Principal Allen refused to let Plaintiff return to class because he feared a disruption to the classroom.

Plaintiff's parents came to the school and met Principal Allen outside. Plaintiff's father stood "toe-to-toe" with Principal Allen and yelled. Principal Allen asked his staff to call campus security and the police. Plaintiff and his parents left school grounds.

---

[1] These facts are undisputed unless otherwise noted. Unless citation indicates otherwise, the facts are taken from Defendants' Statement of Undisputed Facts, Doc. 43 at 2–11, and Plaintiff's Response thereto, Doc. 44 at 1–7.

[2] Plaintiff's emails are quoted verbatim throughout.

Plaintiff was allowed to return to school the next day, but Plaintiff argues he was required to have a reentry meeting to return. Doc. 44 at ¶ 23. His parents were banned from campus.

Plaintiff enrolled at Grand Junction High School for his sophomore year, 2021-2022. On November 9, 2021, he sent an email to his teachers India Leech, Amy Rafferty, and Walter Fox. He copied Principal Jared Burek and other administrators. This email read "I find it wrong that some of you want to be involved but some do not answer you know who you are so not if you want to be involved I feel you need to answer shame on the ones who don't answer," he continued, saying to Ms. Rafferty "I have a few things for you to elaborate for me because your grading doesn't make sense." It finished with "So now let get to my other points I have asked you mrs. leech for help today but multiple things where more important correct? So shame on you Mrs. leech shame one you mrs.rafferty shame on your guys who don't answer it is sad when I reach out for help y'all can't help."

Principal Burek believed that this email violated the rule that students communicate appropriately and professionally. He called Plaintiff to the office on November 10, 2021, and explained that his email broke a school rule. Principal Burek specifically explained that language such as "shame on you" is inappropriate when directed toward teachers. Plaintiff was given a timeout and not allowed to return to Ms. Rafferty's class. A timeout is used to deescalate situations and avoid the need for more severe consequences like suspension.

On May 3, 2022, Plaintiff sent an email to Mr. Fox, his counselor, Stacy Keever, and his mother. This email read "who here is familiar with gradpoint and how long it takes a student to complete a course. I hope you mr.fox answer with 'I'll prove you wrong' because that's what you said in person," "I was wanting help with gradpoint your response was

it's my fault so shame on you I expect an apology," "I want copies of every report card from this year an I expect it by the end of the day," and finally "We need to know that instead of blaming the student like you do fox it's never your fault correct. Respond wisely because you're on video saying things so make sure it's the same statement."

Principal Burek again believed this email violated the student code of conduct. Plaintiff met with Principal Burek and Dean of Students Tom LeFebre before he went to Mr. Fox's class. They asked Plaintiff to rewrite the email to express his frustrations respectfully. Plaintiff states he was required to do so. Doc. 44 at ¶ 67.

Plaintiff sued, asserting that these actions violated his first amendment rights and constituted retaliation.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if "under the substantive law it is essential to the proper disposition of the claim." *Wright ex rel. Tr. Co. of Kansas v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If, drawing all reasonable inferences in the light most favorable to the nonmoving party, a reasonable juror could not return a verdict for the nonmoving party, summary judgment is proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## I.  First Amendment Claim

When assessing whether a public school has violated a student's right to free speech, lower courts are bound by *Tinker v. Des Moines*

*Independent Community School District*, 393 U.S. 503 (1969). While students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," schools are not without power to punish student speech. The Tenth Circuit laid out the governing law in *Thompson v. Ragland*, 23 F.4th 1252 (10th Cir. 2022), explaining the circumstances in which schools can restrict student speech. Schools can prohibit and punish (1) "conduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others," *Tinker*, 393 U.S. at 513; (2) "sexually explicit, indecent, or lewd speech," *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986); (3) "student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns," *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988); and (4) restrict student expression that they reasonably regard as promoting illegal drug use," *Morse v. Frederick*, 551 U.S. 393, 408 (2007).

This case comes down to a typical *Tinker* analysis. "Under *Tinker*, a public school may not restrict private student expression unless the school reasonably forecasts it 'would materially and substantially interfere with the requirements of appropriate discipline in operation of the school,' or 'impinge upon the rights of other students.'" *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 36 (10th Cir. 2013) (quoting *Tinker*, 393 U.S. at 505–06). Here, summary judgment is proper if the evidence shows that a reasonable person would believe Plaintiff's actions created a risk of material disruption to the school's educational efforts. *Id.*

Defendants argue that the three incidents at issue each had a risk of substantial disruption that they sought to prevent. Plaintiff responds that the facts that support Defendants' conclusion are in dispute.

On February 3, 2021, Plaintiff was sent to the office by Ms. Ciocco. The parties dispute some of what followed. Plaintiff disputes Defendants' assertions that he was yelling, demanding an explanation, and being insubordinate. Doc. 44 at ¶ 11, 13, and 35. The parties further dispute whether Plaintiff was sent home because of the email and whether the February 4 meeting was a required "reentry meeting." *Compare* Doc. 43 at ¶¶ 23–24 *with* Doc. 44 at ¶¶ 23–24.

Even making all factual inferences in Plaintiff's favor, the facts are sufficient to support Defendants' contention that their actions were reasonably based on an effort to prevent substantial interference. The parties do not dispute that Plaintiff's phone call with his parents created a disturbance in the office, Doc. 43 at ¶ 15, Doc. 44 at ¶ 15; that Principal Allen prevented Plaintiff from returning to class to prevent a disruption to the classroom, Doc. 43 at ¶ 18, Doc. 44 at ¶ 18; and that Plaintiff's parents confronted Principal Allen and security and the police were called. Doc. 43 at ¶¶ 20–21, Doc. 44 at ¶¶ 20–21. Even if Plaintiff was sent home and required a reentry meeting, Defendants have shown that it was justified by the disturbance caused in the office.

The November 9, 2021, and May 3, 2022, instances follow similar patterns. On both days, Plaintiff sent an email expressing his frustrations with his teachers. In response to the November 9, 2021 incident, Principal Burek gave Plaintiff a timeout. Doc. 43 at ¶ 54. This prevented him from going to his fifth-period class with Ms. Rafferty's class, one of the teachers he had emailed. *Id.* Principal Burek testified that he did so because he was worried Plaintiff would continue to confront Mr. Rafferty and demand answers immediately, as he had done in his email, and this would disrupt the class. *Id.* at ¶¶ 53, 54; Doc. 43-11 at ¶ 15. Similarly, after the May 3, 2022, email, Principal Burek and Dean LeFebre made Plaintiff rewrite the email before Mr. Fox's class because they were

again concerned Plaintiff would confront Mr. Fox, causing a disruption. Doc. 43 at ¶ 64.

Plaintiff disputes these facts. But he disputes them only on the grounds that the incident reports that Principal Burek wrote do not mention disruption. *See* Docs. 43-12 and 43-18. From this silence, Plaintiff posits that Principal Burek did not forecast disruption at all. To the extent this argument is about Principal Burek's subjective intent, that is not relevant to the *Tinker* analysis. *See Taylor*, 713 F.3d at 45 ("the *Tinker* standard, which evaluates the exercise of school discretion based on objective reasonableness").

And these omissions do not move the needle on the objective reasonableness analysis. The question is not whether the reports used the word "disruption;" it is whether the record would permit a reasonable person to think restricting Plaintiff's speech was necessary to prevent disruption. In a similar case, the Tenth Circuit held that "[i]n assessing materiality, '[w]e are obligated to examine the record as a whole . . . and evaluate what the school actually did, as opposed to carving out an isolated statement from the record.'" *Id.*, 713 F.3d at 39 (quoting *Fleming v. Jefferson Cnty. Sch. Dist.*, 298 F.3d 918, 931 (10th Cir. 2002) (some modifications in original)).

In *Taylor*, the school district banned a religious group from handing out rubber fetus dolls to make an anti-abortion statement. The rubber dolls had been ripped apart, bounced off walls, and stuck to ceilings. So the school district confiscated the dolls and banned their distribution to stem this disruption. The plaintiffs in that case pointed out that, when he confiscated the dolls, the principal said "It's time to shut this down . . . Some people are getting offended," and argued that showed the confiscation had to do with the message, not disruption. *Id.* at 38–39. But the Tenth Circuit held that even that statement did not overcome

the same principal's testimony about actual hallway disruptions or complaints from other students. Regardless of the statement's meaning, the whole record pointed toward limiting disruption. *Id.*

Here too, the record as a whole points toward limiting disruption. Plaintiff does not dispute that he has a history of confronting teachers. Plus, taking a timeout and rewriting the email are geared toward preventing confrontation, not punishing. *See* Doc. 43 at ¶ 55 ("A time-out is an intervention school administrators use to deescalate situations, avoid further conflict, and therefore avoid the need for a more severe consequence such as in-school suspension."), Doc. 44 at ¶ 55 ("Undisputed). I cannot ignore *Taylor*'s example that "[v]iewing evidence in light most favorable to Plaintiffs does not extend to ignoring undisputed evidence that undermines their position," 713 F.3d at 39. And I cannot ignore that Plaintiff does not dispute significant evidence that points toward a potential disruption.

Because there is "ample undisputed evidence," *id.*, that Defendants reasonably forecast substantial disruption, any restrictions of speech were constitutionally permissible under *Tinker*.

Although the *Tinker* analysis is dispositive, I will briefly address Defendants' main argument that they applied only the content-neutral rule from the student handbook, "use appropriate and professional verbal and physical boundaries." Doc. 43 at 13 (quoting Doc. 43-13 at 3).

First, I note that it is unclear whether content-neutral regulations create an exception to *Tinker*. In *Thompson*, the Tenth Circuit noted that the Supreme Court's statement that "a university 'may expect that its students adhere to generally accepted standards of conduct' that govern 'the time, the place, and the manner' of student speech." 23 F.3d at 1257 (quoting *Healy*, 408 U.S. at 192–93). The *Thompson* panel went on to note that the plaintiffs in that case did not argue that the speech

"otherwise violated valid restrictions on the time, place, or manner of speech" and failed to claim a violation of the student code of conduct. *Id.* at 1259.

Defendants read *Thompson* to exclude content-neutral rules from *Tinker* scrutiny and "clearly established law in the Tenth Circuit permits school officials to reasonably enforce the student code of conduct." Doc. 43 at 19. They argue I should follow the Ninth Circuit holding from *Jacobs v. Clark County School District*: "*Tinker* says nothing about how viewpoint- and content-neutral restrictions on student speech should be analyzed." 526 F.3d 419, 431–32 (9th Cir. 2008).

But I cannot stretch *Thompson* as far as Defendants do. The *Thompson* panel did not hold that content-neutral codes of conduct are exempt from *Tinker* because it did not even address that argument—it was not presented. These facts may matter, but I am not persuaded that *Thompson* created a new exception to *Tinker*. In an opinion from just six months before *Thompson*, the Supreme Court confirmed just three exceptions to *Tinker*:

> This Court has previously outlined three specific categories of student speech that schools may regulate in certain circumstances: (1) indecent, lewd, or vulgar speech uttered during a school assembly on school grounds; (2) speech, uttered during a class trip, that promotes illegal drug use; and (3) speech that others may reasonably perceive as bearing the imprimatur of the school, such as that appearing in a school-sponsored newspaper.

*Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 594 U.S. 180, 187–88 (2021) (citation modified). All other circumstances run through *Tinker. See id.*

Even if content-neutrality were definitive, a reasonable jury could find that the punishments in this case were not content neutral. A rule is not content neutral if it "draws distinctions based on the message a

speaker conveys." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). Here, Defendant Burek took issue with the words and content of the email. *See* Doc. 43 at ¶ 50, 61; Doc. 44 at ¶ 50, 61. So the rule depends on the content of the email. To make this point clear, one of the remedial actions taken was to make Plaintiff rewrite the email. Doc. 43 at ¶ 65; Doc. 44 at ¶ 65. Because the rule's application depends on the content of the email, a reasonable jury could find it is not content neutral.

## II.    Remaining Claims

Defendants also claim they are entitled to summary judgment on Plaintiff's retaliation claims. To establish a First Amendment retaliation claim, a plaintiff must show that he was engaged in constitutionally protected activity, that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and that the defendant's adverse action was substantially motivated as response to the plaintiff's exercise of constitutionally protected conduct. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

Because, as explained above, Plaintiff has not shown he was engaged in constitutionally protected speech, Defendants are entitled to summary judgment on the remaining retaliation claims.

## CONCLUSION

It is ORDERED that:

The Defendants' Motion for Summary Judgment, **Doc. 43**, is **GRANTED**.

DATED: March 25, 2026          BY THE COURT:

_____
Daniel D. Domenico
Chief United States District Judge